IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISIS JONES,<br>on behalf of herself and all other similarly<br>situated individuals,<br><br>                Plaintiff,<br><br>vs.<br><br>MISS KITTY'S INC.,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)   Case No. 3:23-CV-1327-MAB<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Isis Jones worked as an exotic dancer for, at, or in the Miss Kitty's Club, which was owned and operated by Defendant Miss Kitty's, Inc. (Doc. 1). Plaintiff alleges that Miss Kitty's misclassified her and the other exotic dancers as non-employee contractors when they were, in reality, employees (Doc. 1). Plaintiff further alleges that as a result of this misclassification, Miss Kitty's violated federal and state labor laws because it did not pay the dancers any wages for the hours they worked, collected a stage rental fee from the dancers every shift, and retained a portion of the tips the dancers received (Doc. 1). Plaintiff filed this suit on behalf of herself and other exotic dancers for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. 115/1 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILL. COMP. STAT. 105/1 *et seq.* (Doc. 1).

Currently before the Court is Plaintiff's motion seeking class certification pursuant

to Federal Rule of Civil Procedure 23(b)(3) on the IMWL claim, which challenges Miss Kitty's failure to pay the dancers minimum wage, and the IWPCA claims, which challenges Miss Kitty's collection of a stage rental fee from every dancer for each shift they worked (Doc. 28).[1] When Miss Kitty's did not file a response in opposition to the motion for class certification by the deadline (*see* Doc. 27), Plaintiff filed a "Motion to Grant Plaintiff's Class Certification Motion as Conceded" (Doc. 32). *See* SDIL-LR7.1(a)(5) ("In civil cases, failure to file a timely response to a non-dispositive motion may be deemed consent to the relief as requested."). Miss Kitty's also did not respond to Plaintiff's second motion. Defense counsel did, however, send an email to the undersigned's proposed documents inbox (with all counsel of record included on the email) explaining the reason for his unresponsiveness. The Court appreciates the explanation from defense counsel. The Court also notes, however, that defense counsel did not indicate in his email any opposition to the motion for class certification, nor did he ask for extra time to file a response, which leads the Court to conclude that he has essentially consented to certification of the requested classes. The Court will nevertheless provide a brief explanation as to how Plaintiff has satisfied the requirements for certifying a class under Federal Rule of Civil Procedure 23(b)(3).

## FACTS

The following facts are uncontested and taken from Plaintiff's affidavit (Doc. 29-2), Defendant's responses to Plaintiff's interrogatories (Doc. 29-3), and Plaintiff's

---

[1] Plaintiff is not seeking conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) with respect to her FLSA claim.

Requests for Admission, (Doc. 29-1), to which Defendant did not respond and are therefore deemed admitted. FED. R. CIV. P. 36(a)(3) (a statement in a request for admission is deemed admitted if not responded to within 30 days of service).[2]

Miss Kitty's is a strip club, featuring nude and semi-nude female exotic dancers (Doc. 29-1, ¶1). During the relevant period, more than one hundred (100) Class Members worked or performed as exotic dancers for, at, or in Miss Kitty's strip club (Doc. 29-1, ¶¶11, 12; Doc. 29-2, ¶26). The Class Members' primary job duty was identical: to interact with customers and to perform strip tease and private and semi-private provocative and/or erotic dances for the customers' entertainment and enjoyment (Doc. 29-1, ¶10; Doc. 29-2, ¶¶ 6-7).

The Class Members' right or ability to work or perform as exotic dancers for, at, or in Miss Kitty's club was subject to the selection and discretion of Miss Kitty's managers or agents (Doc. 29-1, ¶19; Doc. 29-2, ¶13). Once hired, the relationship between Miss Kitty's and the Class Members was ongoing and at-will, rather than *ad hoc* or limited to a special appearance (Doc. 29-1, ¶2; Doc. 29-2, ¶8).

Miss Kitty's had the authority to dictate if, when, and during what shifts each Class Member worked in the club (Doc. 29-1, ¶23; Doc. 29-2, ¶17; *see also* Doc. 29-1, ¶19). Miss Kitty's also had the authority to terminate or suspend the Class Members from performing at the club (Doc. 29-1, ¶22; Doc. 29-2, ¶16; *see also* Doc. 29-4, ¶7).

While working, the Class Members were required to abide by the rules set forth

---

[2] Defendant has not moved to withdraw the admissions. *See* FED. R. CIV. P. 36(b).

by Miss Kitty's (Doc. 29-2, ¶20; *see also* Doc. 29-4, ¶16; Doc. 29-5 ("Miss Kitty's New Rules for All Dancers")). For example, dancers could not chew gum while working, could not have cell phones while on the floor, could only use the bathrooms in the locker room, and were not allowed to leave to get food or cigarettes (Doc. 29-5). Miss Kitty's also set and controlled the prices the dancers were required to charge customers for private and semi-private dances, as well as the policies and procedures the dancers had to follow in giving such dances (Doc. 29-1, ¶24; Doc. 29-2, ¶18).

Central to the claims in this case, Miss Kitty's considered all of the exotic dancers who worked for, at, or in the club to be non-employee, independent contractors (Doc. 29-4, ¶¶3, 6; *see also* Doc. 29-1, ¶¶3, 5). None of the exotic dancers was ever classified as an employee (Doc. 29-4, ¶4; *see also* Doc. 29-1, ¶4). As such, Miss Kitty's never paid wages or any other form of compensation to any exotic dancer (Doc. 29-4, ¶¶9, 10, 11; *see also* Doc. 29-1, ¶6, 20; Doc. 29-2, ¶14). Rather, the dancers' only compensation were the tips they received from customers (Doc. 29-4, ¶¶9, 11; *see also* Doc. 29-1, ¶21; Doc. 29-2, ¶15). Miss Kitty's also required the dancers to pay a "stage rental fee"—$40 for day shifts and $50 for night shifts—for each shift they worked (Doc. 29-4, ¶3; *see also* Doc. 29-2, ¶19; Doc. 29-5). Miss Kitty's admitted that the Class Member dancers were all "treated equally" and subjected to the same policies, treatment, supervision, and control (Doc. 29-1, ¶¶7, 8; Doc. 29-2, ¶¶11, 12; Doc. 29-4, ¶5).

### PROPOSED CLASSES

Plaintiff is seeking certification of two classes: an IMWL class and an IWPCA class (Doc. 29, p. 2).

The IMWL class is defined as all individuals who worked or performed as an exotic dancer for, in, or at Defendant's Club during the period April 2020 through the final date of judgment in this case (Doc. 1, p. 5; Doc. 28, p. 1; Doc. 29, pp. 2, 20). *See* 735 ILL. COMP. STAT. 5/13-206 (limitations period for actions brought under the IWPCA is ten years).

The IWPCA class is defined as all individuals who worked or performed as an exotic dancer for, in, or at Defendant's Club during the period April 2013 through the final date of judgment in this case (Doc. 1, p. 5; Doc. 28, p. 1; Doc. 29, pp. 2, 20). *See* 820 ILL. COMP. STAT. 105/12(a) (limitations period for actions brought under the IMWL is three years).

## DISCUSSION

A plaintiff seeking to certify a class must prove, by a preponderance of the evidence, that their proposed class satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b). *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012) (citing FED. R. CIV. P. 23); *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021). Here, Plaintiff is seeking certification under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting individual members" and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

Plaintiff argues, Miss Kitty's does not dispute, and the Court has no reason to

doubt that the requirements of Rule 23(a) are satisfied. First, the proposed class, which consists of over 100 exotic dancers, is sufficiently numerous. *See* FED. R. CIV. P. 23(a)(1) (the proposed class must "be so numerous that joinder of all members is impracticable."); *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement.").

Second, commonality is satisfied because there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality requires a prospective class to show that its claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 550, 553 (7th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at 350). In other words," a prospective class must articulate at least one common question that will actually advance all of the class members' claims." *Phillips*, 828 F.3d at 551. *See also Jamie S*, 668 F.3d at 497 ("[T]he plaintiffs must show that they share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims.") (emphasis in original).

As Plaintiff said, her claims under the IMWL and the IWPCA, and those of the class she seeks to represent, all depend on a common contention that Miss Kitty's employment practices violated state labor laws. The chief contention is that Miss Kitty's misclassified all of the exotic dancers as independent contractors when they actually qualified as employees, as that term is defined under the IMWL and the IWPCA (Doc. 29,

p. 9).³ ⁴ *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.") (citations omitted). If true, then additional common questions arise as to whether Miss Kitty's failure to pay the dancers any wages violated the IMWL's requirement that employees be paid compensation at or above the minimum wage rate in Illinois and whether Miss Kitty's collection of a stage rental fee from every dancer for each shift they worked constituted an unlawful compensation deduction in violation of the IWPCA.

These questions are common across the claims of each class member. They are determinative of Miss Kitty's liability and are therefore central to the validity of each class members' claims. Furthermore, they can be resolved on a class-wide basis because Miss Kitty's admitted that exotic dancers all performed the same job duties, were all classified

---

³ The IMWL's protections apply to "any individual permitted to work by an employer in an occupation." 820 ILL. COMP. STAT. 105/3(d). The IMWL's regulations set forth six factors to consider in determining whether an individual is an employee or independent contractor, which are the same factors used to to determine whether an individual is an employee under the FLSA. *Compare* 56 ILL. ADMIN. CODE 210.110 *with Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022) (citing *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987)). Those factors are: (1) the degree of control the alleged employer exercised over the individual; (2) the extent to which the services rendered by the individual are an integral part of the alleged employer's business; (3) the extent of the relative investments of the individual and alleged employer; (4) the degree to which the individual's opportunity for profit and loss is determined by the alleged employer; (5) the permanency of the relationship; and (6) the skill required in the claimed independent operation. 56 ILL. ADMIN. CODE 210.110; *Brant*, 43 F.4th at 665 (citing *Lauritzen*, 835 F.2d at 1534–35).

⁴ The IWPCA's protections apply to "all employers and employees in [Illinois]." 820 ILL. COMP. STAT. 115/1. Under the IWPCA, all individuals qualify as employees of an employer unless the employer proves all three elements of the independent contractor exemption. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). This exemption requires the employer to show that a worker is an individual (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract . . . and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer . . . ; and (3) who is in an independently established trade, occupation, profession or business. *Id.* (citing 820 ILL. COMP. STAT. 115/2).

as independent contractors, were never paid any wages, were all required to pay the same "rental fee" per shift, and were all subject to the same policies and practices regarding treatment, supervision, and control (*see* Docs. 29-1, Doc. 29-4). In other words, there are no material differences or unique circumstances that exist between Plaintiff and the Class Members that would require them to present individualized evidence or require the Court to make individualized determinations as to whether they were each an employee or independent contractor or whether Miss Kitty's violated the IMWL and IWPCA by denying them wages and making them pay stage rental fees. Rather, these questions can be answered as to the entire class in one fell swoop using the same generalized, class-wide evidence. Accordingly, commonality is satisfied. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'") (citation omitted).

Third, typicality, which asks whether the plaintiff's claims or defenses are typical of the claims or defenses of the class, FED. R. CIV. P. 23(a)(3), is satisfied because, as explained above, Plaintiff's claims arise from the same injurious practice or course of conduct and are based on the same legal theory as the claims of the class at large. *Lacy*, 897 F.3d at 866 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

And, fourth, Plaintiff contends that adequacy is satisfied because she shares the same grievance against Miss Kitty's as the rest of the putative class members and her

interests are aligned with theirs, and her attorneys, are qualified, experienced, and have the resources necessary to prosecute the claims in this matter (Doc. 29, p. 11; *see also* Docs. 29-3 and 29-6 (attorney affidavits)). *See* FED. R. CIV. P. 23(a)(4) ("the representative parties will fairly and adequately protect the interests of the class"). The Court has no reason to doubt that the named Plaintiff and proposed class counsel will fairly and adequately protect the interests of the class.

The Court turns next to Rule 23(b)(3)'s requirements that common questions of law or fact "predominate" over individual ones and that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The ultimate question in a Rule 23(b)(3) class is whether "judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). *See also Suchanek*, 764 F.3d at 761 ("Ultimately, the court must decide whether classwide resolution would substantially advance the case."). Plaintiff argues, Miss Kitty's does not dispute, and the Court agrees that the requirements of Rule 23(b)(3) are satisfied.

Predominance, which "builds on commonality," asks whether "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Howard*, 989 F.3d at 607 (quoting *Tyson Foods*, 577 U.S. at 453). *See also Messner*, 669 F.3d at 814 ("Predominance is 'similar to Rule 23(a)'s requirements for typicality and commonality, [but] the predominance criterion is far more demanding.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

623 (1997)). In other words, "the predominance requirement is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (citation and internal quotation marks omitted).

In this case, common questions regarding Miss Kitty's liability clearly predominate over any potential individual questions. The question of whether the exotic dancers were misclassified as independent contractors is not only central to the validity of every class member's claim, it is actually the linchpin of the entire case—Miss Kitty's liability turns on the answer to this question. The protections afforded by the IMWL and the IWPCA only apply to *employees*, not independent contractors. Therefore, as Plaintiff pointed out, if the Court determines on the merits that the exotic dancers were properly classified as independent contractors, then Miss Kitty's cannot be held liable for violating either the IMWL or the IWPCA and all of the class members' claims would fail in unison (Doc. 29, pp. 14, 15). "[C]ommon question predominates over individual claims if 'a failure of proof on the [common question] would end the case" and the whole class "will prevail or fail in unison.'" *Bell*, 800 F.3d at 378 (quoting *Amgen*, 568 U.S. at 460).

It is also undoubtedly more efficient to decide the common questions regarding Miss Kitty's liability in a single class action proceeding than in separate individual proceedings. The Court also credits Plaintiff's explanation that a class action is the best way to adjudicate the controversy because the potential monetary recovery for each class member is likely too low to justify individual litigation (Doc. 29, pp. 17–20).

Accordingly, the Court thinks "it makes good sense" to resolve the common issues

regarding liability "in one fell swoop." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (citation omitted). *See also Chicago Teachers Union, Local No. 1 v. Bd. of Educ.*, 797 F.3d 426, 444 (7th Cir. 2015) ("[W]hen adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied." (quoting *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1436–37 (2013))); 7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed.) ("When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.").

After the question of liability is resolved, and if it is answered in favor of the class, the parties and the Court can determine the best course for adjudicating the issue of damages (*see* Doc. 29, pp. 18–19). Plaintiff acknowledges that determining damages may require individualized proof from each class member (Doc. 29, pp. 18–19). Or the class might use statistical sampling to establish class-wide damages (*Id.* at p. 19, n.9). Regardless, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (collecting cases). *See also Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) (describing various methods for handling individualized damages determinations in a class action).

## CONCLUSION

In conclusion, the Court is persuaded that class certification is appropriate under Rule 23(b)(3). Plaintiff's motion for class certification (Doc. 28) and "Motion to Grant

Plaintiff's Class Certification Motion as Conceded" (Doc. 32) are therefore **GRANTED**.

The following classes are **CERTIFIED** pursuant to Rule 23(b)(3):

The IMWL class, which is comprised of all individuals who worked or performed as an exotic dancer for, in, or at Defendant's Club during the period April 2020 through the final date of judgment in this case.

The IWPCA class, which is comprised of all individuals who worked or performed as an exotic dancer for, in, or at Defendant's Club during the period April 2013 through the final date of judgment in this case.

Plaintiff Isis Jones is **APPOINTED** as class representative for both the IMWL class and the IWPCA class. Attorneys Gregg Greenburg and Athena Herman are **APPOINTED** as class counsel for both the IMWL class and the IWPCA class.

This matter will be set for a status conference to discuss the next steps in this case. It will cover, at minimum, defense counsel's current status and ability to continue litigating this case, Defendant's production of names and contact information for class members, how the Class Notice will be disseminated to class members and a proposed schedule for doing so,[5] the state of discovery, proposed deadlines for dispositive motions, and the proposed format of trial.

**IT IS SO ORDERED.**

**DATED: June 5, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[5] The Court notes that Plaintiff asked for the class members' names and last known addresses and indicated that she intends to disseminate the Class Action Notice via U.S. mail only (*see* Doc. 29). The Court, however, is concerned that many class members will no longer live at the same physical address that they gave Miss Kitty's when they were hired and wonders whether it would be prudent to also collect cell phone numbers and email address (if available) and to disseminate the Class Action Notice via email and text message in addition to U.S. Mail.