IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISIS JONES | * |
| | * |
| *On Behalf of Herself and* | * |
| *Others Similarly Situated* | * |
| | * |
| PLAINTIFF, | * |
| | * |
| v. | *   Case No. 3:23-cv-1327-MAB |
| | * |
| MISS KITTY'S, INC. | * |
| | * |
| DEFENDANT. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF</u>
## <u>PLAINTIFF'S MOTION FOR SANCTIONS</u>

Plaintiff Isis Jones ("Plaintiff"), through counsel, submits her Memorandum in Support of Plaintiff's Motion for Sanctions. By the submission of her Motion, Plaintiff requests this Court sanction Defendant Miss Kitty's Inc. ("Defendant") for its spoliation of critical and material evidence necessary for Plaintiff to prove Defendant's class-wide liability and substantiate and quantify class-wide damages. For good cause set forth and supported below, pursuant to this Court's own inherent power, the clear and convincing evidence demands this Court's imposition of the heaviest available sanction against Defendant in the form of default. *See, e.g., REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005), *aff'd,* 200 F. App'x 592 (7th Cir. 2006).

## ARGUMENT

1. **Defendant Failed its Legal Duty to Preserve Critical Material Evidence Related to Class Members.**

"A party has a duty to preserve evidence when it knows, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). "At the latest, this duty attaches when the plaintiff informs the defendant of his potential claim." *Chandler v. Buncich*, 2012 U.S. Dist. LEXIS 136239, at *1 (N.D. Ind. 2012). The duty may arise "even prior to the filing of a complaint as long as it is known that litigation is likely to commence." *MacNeil Auto. Products, Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 801 (N.D. Ill. 2010).

Here, on March 30, 2023, *prior to the commencement of litigation*, Plaintiff, through counsel, served Gail M. Allen ("Ms. Allen"), Defendant's President and Illinois Registered Agent, with a letter proposing a pre-litigation resolution of Plaintiff's individual Federal and Illinois minimum wage and wage payment claims.  *See* March 30, 2023, Pre-Litigation Letter ("Plaintiff's Pre-Litigation Letter") attached hereto as Exhibit 1.  In serving Plaintiff's Pre-Litigation Letter, Plaintiff notified Defendant as follows:

> If this matter cannot be resolved at this pre-litigation stage, my office will promptly, with the assistance of locally licensed Illinois co-counsel, initiate a class / collective action lawsuit on behalf of [Plaintiff] and all similarly situated current and former exotic dancers that worked or performed for, at, or in the [Defendant's Miss Kitty's Gentlemen's Club], and arising from [Defendant's] misclassification of [Plaintiff] and other similarly situated class members as non-employee contractors and corresponding violations of the Federal Fair Labor Standards Act, 29 USC 201, et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/1, et seq. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1, et seq. ("IWPCA").

Thus, as early as early the beginning of April 2023, Defendant was on notice of imminent class and collective litigation against it, to be prosecuted by Plaintiff on behalf of herself and other similarly situated current and former exotic dancers. Moreover, as early as the beginning of April 2023, Defendant was on notice of its duty to preserve information and documents relating to the identity of the putative Class Members as well as substantive information related to each Class Member's attendance, compensation, and payment of fees and kickbacks to Defendant during the applicable FLSA, IMWL, and IWPCA statutory recovery periods.

Even if Defendant somehow claims it did not receive or was not aware of Plaintiff's Pre-Litigation Letter, on May 23, 2023, Plaintiff effectuated service of process of Plaintiff's Collective and Class Action Complaint on Ms. Allen, Defendant's Illinois Registered Agent (ECF 7). Therefore, on May 23, 2023, and thereafter, Defendant had knowledge and actual notice that it was the subject of active litigation, arising under the FLSA, IMWL, and IWPCA, prosecuted by Plaintiff, individually, and on behalf of:

    (a)    The FLSA Minimum Wage Class ("All persons who worked or performed as exotic dancers for, in, or at Defendant's Club, during the period April 2020 through the date of judgment in this case");

    (b)    The IMWL Sub-Class ("All persons who worked or performed as exotic dancers for, in, or at Defendant's Club, during the period April 2020 through the date of judgment in this case"); and

    (c)    The IWPCA Sub-Class ("All persons who worked or performed as exotic dancers for, in, or at Defendant's Club, during the period April 2013 through the date of judgment in this case").

*See* Plaintiff's Collective and Class Action Complaint (ECF 1) Paragraphs 22-24.

Finally, other courts have noted that the duty to preserve evidence "certainly arises upon a formal discovery request." *Am. Family Mut. Ins., Co. v. Roth*, 2009 U.S. Dist. LEXIS 32519, at *11 (N.D. Ill. 2009). In this case, on August 16, 2023, Plaintiff served Defendant with her First Set of Interrogatories and First Set of Requests for Production of Documents. *See* Plaintiff's First Set of Interrogatories attached hereto as Exhibit 2; *see also* Plaintiff's First Set of Document Requests attached hereto as Exhibit 3.   Related to the Motion at bar, upon Defendant's August 16, 2023, receipt of Plaintiff's Interrogatories and Document Requests, Defendant had notice of (a) the critical relevance of documents relating to the identity of the putative Class Members as well as substantive information related to each Class Member's attendance, compensation, and payment of fees and kickbacks to Defendant during the applicable FLSA, IMWL, and IWPCA statutory recovery periods; (b) Defendant's duty to preserve and produce these same documents that were within Defendant's possession, custody, and control; and (c Defendant's continuing duty to preserve and produce these same documents as they came into Defendant's possession, custody, and control throughout the litigation. *See e.g*. Plaintiff's Interrogatory 2 ("*Identify* and provide full contact information including addresses, emails, and phone numbers for each person that has worked or performed as an owner, officer, member, manager, supervisor, employee, exotic dancer, DJ, or independent contractor for, at, or in Miss Kitty's at any time between 2013 through the present. In your response, identify all job titles each identified individual has, had, and/or currently holds at or with Miss Kitty's."); Plaintiff's Document Request 2 ("All documents that relate to Plaintiff, any future opt-in Plaintiff, and any future class member's work and/or performances as an exotic dancer for, at, or in Miss Kitty's during the period 2013 through the present."); Plaintiff's Document Request 3 (*"*All documents identifying, describing, or

referring to pay (including payroll wages, cash wages, tips, service charges, fringes, and benefits) paid by any Defendant to Plaintiff, any future opt-in Plaintiff, and any future class member for and/or in exchange for working or performing as an exotic dancer for, at, or in Miss Kitty's during the period 2013 through the present."); Plaintiff's Document Request 4 ("All documents setting forth or describing the shifts and/or hours Plaintiff, any future opt-in Plaintiff, and any future class member worked or performed each day and each week for, at, or in Miss Kitty's during the period 2013 through the present.").[1]

Arising from the foregoing, Defendant was unequivocally on notice of the substance of Plaintiff's individual and class-wide claims and of the scope and extent of the class-wide damages Plaintiff seeks in recovery on behalf of herself and the Class Members. As such, upon the occurrence of Defendant's notice, Defendant was under a strict legal duty to prevent spoliation and to preserve critical and material documents and information in this case, specifically including the following:

(a) Information and documents identifying each Class Member that worked or performed as an exotic dancer within Defendant's Miss Kitty's Gentlemen's Club during the period April 2013, through the date of judgment in this case;

(b) Information and documents identifying or otherwise related to Plaintiff and each Class Member's work shifts and work hours as an exotic dancers within Defendant's Miss Kitty's Gentlemen's Club during the period April 2023, through the date of judgment in this case;

---

[1] In responding to Plaintiff's First Set of Interrogatories and Document Requests, Defendant failed to provide or produce any information specifically related to Plaintiff or any Class Members. Yet, in response to Plaintiff's Document Request 12, Defendant's response suggests Defendant was in possession, custody, or control of responsive "stage rental" documents. *See* Defendant's Response to Plaintiff's First Set of Document Requests attached hereto as Exhibit 4. To date, however, Defendant has not produced any such responsive records.

  (c)  Information and documents identifying or otherwise related to the wages Defendant paid Plaintiff and each Class Member as direct compensation for the shifts or hours Plaintiff and each Class Member worked as exotic dancers within Defendant's Miss Kitty's Gentlemen's Club during the period April 2013, through the date of judgment in this case, and

  (d)  Information and documents identifying, describing, or memorializing all fees, kickbacks, deductions, assignments, or withholdings paid by Plaintiff and each Class Member to Defendant arising from or related to Plaintiff and each Class Member working or performing as an exotic dancer within Defendant's Miss Kitty's Gentlemen's Club during the period April 2013, through the date of judgment in this case.

Defendant failed to comply with its preservation duty. On July 26, 2024, this Court ordered Defendant's counsel to confer with Defendant to identify what Class Member identifier information Defendant held its possession, custody, and control. On August 6, 2024, Defendant filed a Status Report incorrectly claiming to have "produced to Plaintiff eight names, phone numbers, and identification cards in compliance with the Court Order." (ECF 41).

More accurately, on July 19, 2024, Defendant's counsel emailed Plaintiff's counsel with photo identification cards for eight (8) Class Members, of which only five (5) appear accompanied by telephone numbers. *See* Defendant's Class Identifier Production attached hereto as Exhibit 5.[2] Aggravating this impotent production, neither Defendant nor

---

[2] On July 2, 2024, following the Court's Certification of Plaintiff's IMWL and IMPCA Classes, the Court held a Status Conference concerning Defendant's production of IMWL and IMPCA Class Member identifiers for Plaintiff's counsel to disseminate Class Notice. At the conclusion of the Conference, the Court directed Defendant's counsel to confer with Defendant to determine what information is available for the Class Members (e.g. phone numbers, addresses, e-mail address, etc.) and file the Status Report with the Court on or before July 16, 2024. (ECF 36). ***Without excuse or explanation, Defendant's counsel failed to timely file its required Class Identifier Report with the Court.***

6

Defendant's counsel provided Plaintiff's counsel with ***any*** explanation, excuse, or justification for its outrageous and highly prejudicial failure to abide by its preservation duty. This is simply unacceptable.

> 2. **Defendant's Failure to Preserve Critical and Material Information and Documents Constitutes Spoliation Because it is the Product of Bad Faith.**

In this case, Defendant's allowance of destruction and failure to preserve critical and material Class Member identifiers constitutes sanctionable spoliation of evidence. "Courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton,* 534 F.3d 672, 681. A showing of "bad faith" is "a prerequisite to imposing sanctions for the destruction of evidence." *Id*. "'Bad faith' is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference." *Mathis v. John Morden Buick, Inc*., 136 F.3d 1153, 1155 (7th Cir. 1998); *see also Davis v. Carmel Clay Sch*., 2013 U.S. Dist. LEXIS 141888, at *6 (S.D. Ind. 2013) (same). Thus, the Court may infer bad faith from the circumstances. *See Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8*, 2014 U.S. Dist. LEXIS 6109, at *7 (C.D. Ill. 2014) ("The way to determine whether evidence was destroyed in order to hide adverse information is . . . [to] infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation."). "[A court may] infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation." *Id.*

Here, each Class Member's ability to recover earned and unpaid wages and damages is dependent upon Defendant's preservation of records identifying each Class Member. Indeed, without identification of each Class Member, it is impossible to recover wages and damages due and owing to each Class Member. Thus, in its failure to preserve Class Member identification records and corresponding allowance or facilitation of the destruction of the same, Defendant evinced its bad faith through its use of unlawful means to severely prejudice Plaintiff's ability to prevail and recover damages on behalf of each Class Member and, in so doing, achieve an unwarranted and fundamentally unfair self-benefit. *See Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 504 (D. Md. 2010) (finding that deletion of files shortly after notice they would otherwise be discovered ""compels the conclusion that [defendant's president] was knowingly engaged in efforts to destroy evidence that he regarded as harmful to Defendants and beneficial to Plaintiff."). Consequently, this Court must conclude that Defendant's failure to comply with its preservation duty, coupled with the severe prejudice to Plaintiff and the Class Members and ill-gotten and unfair benefit achieved by Defendant resulting from the same confirms Defendant's bad faith and sanctionable motive. *See S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co*., 695 F.2d 253, 259 (7th Cir. 1982) (noting that court may rely on "totality of the circumstances" to infer bad faith).

Finally, Defendant cannot "pass the buck" and avoid responsibility or culpability for its bad faith spoliation. Given Defendant's counsel's dubious participation[3] in this litigation,

---

[3] This is not intended as an *ad hominem* attack against Defendant's counsel. But Plaintiff's counsel would be remis if the Court is not reminded that Defendant's counsel's conduct in this matter raises serious concerns as to diligence and competency insofar as, in the course of this litigation, he has (a) failed to respond to Plaintiff's First Set of Requests for Admissions, or even

8

it is predictable that Defendant will attempt to justify its preservation failure as a product of miscommunication or omission on the part of Defendant's counsel. This, however, is no defense. A party to litigation is generally responsible for the acts or omissions of its agents. As courts have repeatedly noted, for instance, "clients may be held responsible for the acts and omissions of their chosen counsel." *Sun v. Bd. of Trustees of Univ. of Illinois*, 229 F.R.D. 584, 590 (C.D. Ill. 2005); *see also Harrington v. City of Chicago*, 2004 U.S. Dist. LEXIS 26904, at *4 (N.D. Ill. 2004) ("[C]lients are held accountable for the acts and omissions of their attorneys."). Similarly, Defendant cannot be heard to pass blame on a manager or other employee or agent that acted contrary to Defendant's instructions following commencement of its preservation duty. Rather, a corporate party is liable for the misconduct of its employees or officers. *See, e.g. Hogue v. Fruehauf Corp.*, 151 F.R.D. 635, 639-40 (C.D. Ill. 1993) ("The Court imposes the sanction of default judgment on the issue of liability . . . to penalize the officers and employees of Fruehauf whose conduct may be deemed to warrant such a sanction against the corporation[.]"); *Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 146 (N.D. Ill. 1982) (finding that sanctions were appropriate when "defendant, through its agents, supplied counsel with misinformation in response to plaintiffs' requests to produce").

---

take subsequent action to remedy conceded admissions arising from the same; (b) failed to oppose or otherwise respond to Plaintiff's Motion for Class Certification; (c) failed to docket a response to Plaintiff's Motion to Grant Plaintiff's Motion for Rule 23 Class Certification as Conceded, or take similar action to seek an opportunity to oppose or otherwise respond to Plaintiff's Motion for Class Certification; and (d) failed to comply with the Court's Order demanding timely production of a Status Report concerning Defendant's required production of Class Identifiers. Respectfully, the foregoing raises the reasonable conclusion that Defendant's counsel's history of lack of diligence defending Defendant's interests in the context of this litigation suggests a corresponding failure to communicate critical preservation instructions to Defendant, which is the focus of Plaintiff's instant sanctions motion.

### 3. Given the Magnitude and the Severity of the Prejudice Caused by Defendant's Spoliation, the Proper Sanction is Default.

Any sanction imposed pursuant to the Court's inherent powers "should be proportionate to the gravity of the offense." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008). The goals of such sanctions are to "remedy prejudice to [the opposing] party," "reprimand the offender," and "deter future parties from trampling upon the integrity of the court." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (quotation omitted). The Court should thus generally consider whether the misconduct has seriously prejudiced the opposing party; however, a finding of prejudice is not a prerequisite for default. *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). Instead, the misconduct at issue may be so egregious that allowing the case to continue "would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Id*. Before imposing default, the Court must support its decision by clear and convincing evidence and should consider whether lesser sanctions would adequately advance the goals outlined above. *See REP MCR Realty*, 363 F. Supp. 2d at 1010.

Here, Defendant's actions directly and proximately caused Plaintiff and the Class Members to suffer prejudice of a clear and devastating nature. By allowing destruction and/or failing its duty to preserve critical and material information related to the Class Members and their claims, Defendant prevented Plaintiff from learning the identity of nearly all Class Members and severely limited Plaintiff's ability to recover on their behalf. If Defendant cannot identify the Class Members, then Plaintiff is necessarily unable to demonstrate the number of hours each Class Member performed for which Defendant failed

to pay wages; and stripped of the ability to learn or know the amount of unlawful fees or kickbacks Defendant required each Class Member to pay or assign to Defendant each shift. Thus, by allowing destruction or failing to preserve this critical and material evidence - - even following its notice and corresponding legal duty to do so - - Defendant has obviated Plaintiff's ability to present the proof necessary to substantiate each Class Member's entitlement to relief. Consequently, imposition of the harshest sanction in the form of default is, in this case, necessary.[4] *See, e.g., Krumwiede v. Brighton Assocs., LLC*, 2006 U.S. Dist. LEXIS 31669, at *10-11 (N. Dist. Ill. 2006) (entering default in response to "spoliation of evidence . . . essential to [opposing party's] claim").[5]

---

[4] Further, a sanction short of default would not appropriately address the goals of deterrence and punishment. Indeed, if a class action defendant were permitted, or only risked minimal sanction, to destroy or allow the destruction of class member identifiers and critical material records evincing underlying class-wide liability and damages, it would be nonsensical for a defendant facing imminent class-wide liability to not to attempt such a tactic. For this very reason, "litigants who use the judicial process have certain obligations and responsibilities," among them upholding "the integrity of the judicial process in general." *Dotson v. Bravo*, 202 F.R.D. 559, 574 (N.D. Ill 2001).

[5] *See also Metropolitan Opera Assoc., Inc. v. Local 100, Hotel Employees & Restaurant Employees International Union*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003) (ordering default judgment against defendant as a discovery sanction because "counsel (1) never gave adequate instructions to their clients about the clients; overall discovery obligations, [including] what constitutes a 'document' …; (2) knew the Union to have no document retention or filing systems and yet never implemented a systematic procedure for document production or for retention of documents, including electronic documents; (3) delegated document production to a layperson who … was not instructed by counsel[] that a document included a draft or other nonidentical copy, a computer file and an e-mail; … and (5) … failed to ask important witnesses for documents until the night before their depositions and, instead, made repeated, baseless representations that all documents had been produced.")

## CONCLUSION

In this case, Defendant has never meaningfully participated or otherwise pursued a merits-based defense.[6]  Instead, the clear and convincing evidence before the Court confirms Defendant's defense strategy relies wholly on its self-benefit derived from its willful and malicious destruction of the critical and material information and documents Plaintiff requires to prove Defendant's class-wide liability and corresponding class-wide damages.  In carrying out this strategy, Defendant make a mockery of the judicial process.  This Court must recognize Defendant's malignant intentions and swiftly meet the same with its rightfully deserved sanction of default. *See id.*; *see also REP MCR Realty*, 363 F. Supp. 2d at 1012 ("Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.").

---

[6] Following Defendant's submission of a bare-bones Answer without inclusion of ***any*** Affirmative Defenses, Defendant has filed no Motions, has failed to respond or oppose Plaintiff's Motions, has only nominally responded to Plaintiff's discovery requests, and has not yet issued subpoenas, served Plaintiff with discovery requests, and has not failed to note the deposition of Plaintiff or any other fact witnesses.

12

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ATHENA HERMAN LAW, LLC |
| Dated: August 12, 2024 | /s/ *Athena M. Herman*_____ |

Athena M. Herman, Esq., ARDC No. 6243625
416 Main St, Suite 811
Peoria, Illinois 61602
Telephone: (309) 966-0248
Email: athena@athenahermanlaw.com

ZIPIN, AMSTER & GREENBERG, LLC

  /s/ *Gregg C. Greenberg*_____
Gregg C. Greenberg, MD Fed Bar No. 17291
(Admitted *Pro Hac Vice*)
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone: (301) 587-9373
Fax: (240) 839-9142
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiff and the Class*