ZIPIN, AMSTER & GREENBERG, LLC
ATTORNEYS AT LAW

TELEPHONE (301) 587-9373
FACSIMILE (240) 839-9142

8757 GEORGIA AVENUE, SUITE 400
SILVER SPRING, MD 20910
WWW.ZAGFIRM.COM

GREGG C. GREENBERG
DIRECT (301) 830-4116
ggreenberg@zagfirm.com

ALSO LICENSED IN WASHINGTON D.C.
ALSO LICENSED IN VIRGINIA

March 30, 2023

FOR SETTLEMENT PURPOSES ONLY

**BY FIRST CLASS MAIL**
Gail M. Allen, President/Registered Agent
Miss Kitty's, Inc.
5200 Bunkum Road
Washington Park, Illinois 62204

***Re: Isis Jones v. Miss Kitty's, Inc.***

Ms. Allen:

Please be advised that my law firm has been retained by Isis Jones a/k/a "Charm" ("Ms. Jones") for the purpose of prosecuting Ms. Jones' claims for unpaid wages and damages arising from Ms. Jones' exotic dancer employment relationship with Miss Kitty's Inc., located at 5200 Bunkum Road, Washington Park, Illinois 62204 ("the Club").

If this matter cannot be resolved at this pre-litigation stage, my office will promptly, with the assistance of locally licensed Illinois co-counsel, initiate a class / collective action lawsuit on behalf of Ms. Jones and all similarly situated current and former exotic dancers that worked or performed for, at, or in the Club, and arising from the Club's misclassification of Ms. Jones and other similarly situated class members as non-employee contractors and corresponding violations of the Federal Fair Labor Standards Act, 29 USC 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/1, *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1, et seq. ("IWPCA").

Ms. Jones was employed by the Club as an exotic dancer during the period of about 2015 through about March 10, 2023, with non-working periods (i) between about March 2020, through about mid-November 2020, for the Club's COVID-related closure and (ii) for about six (6) weeks in or about August 2022 and/or September 2022, when Ms. Jones was mistakenly fired by the Club, then re-hired upon a realization the Club intended to fire another exotic dancer.

While employed, the exact number of shifts Ms. Jones worked on a weekly basis varied from week to week across Ms. Jones' employment period. For purposes of this correspondence, we will conservatively assume Ms. Jones worked an average of about 4 shifts per week and that each shift lasted approximately 8 hours, for an average total of about 32 hours of work per week.

Throughout the entirety of Ms. Jones' employment relationship with the Club, the Club misclassified Ms. Jones as an independent contractor and paid Ms. Jones **no wages** for hours worked. Instead of paying Ms. Jones wages, the Club required Ms. Jones pay the Club (i) a mandatory house fee of about $45.00 per shift; (ii) a mandatory tip deduction or assignment to the Club's door man and DJ in the combined average amount of $25.00 per shift; and (iii) mandatory tip deductions or assignments from tips Ms. Jones earned from the Club's customers for performing private and semi-private dances, including assignment payments to the Club in the amount of $20.00 for each private dance Ms. Jones performed in the average amount of about $50.00 per shift.

Arising from the foregoing, Ms. Jones is now entitled to recover free and clear unpaid minimum wage compensation, recoupment of unlawfully deducted or assigned tips/moneys, statutory liquidated damages, and attorney's fees and costs under the FLSA and Illinois law. *See Mays v. Rubiano, Inc.*, 2021 U.S. Dist. LEXIS 43810, at *9 (N.D. Ind. 2021) ("In sum, though some factors weigh in favor of independent contractor status, the economic reality of the relationship here [a relationship between an exotic dancer and an exotic dancer club] is one of employer-employee. In making this finding, the court joins a growing chorus of courts that have concluded likewise."); *see also Gilbo v. Agment, LLC*, 831 F. Appx. 772, 778 (6th Cir. 2020); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 232 (3d Cir. 2019); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 242 (4th Cir. 2016); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp.2d 901, 922 (S.D.N.Y. 2013); *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp.2d 1326, 1350 (N.D. Ga. 2011); *Thompson v. Linda & A., Inc.*, 779 F. Supp.2d 139, 151 (D.D.C. 2011).

Ms. Jones' IMWL claims are subject to a three (3) year statutory recovery period. The damages available under the IMWL include (i) payment of the full Illinois Minimum Wage (2019 - $8.25 per hour; 2020 - $10.00 per hour; 2021 - $11.00 per hour; and 2022 - $12.00 per hour; 2023 - $13.00 per hour); (ii) a return of all kickbacks (house fees) paid; (iii) a return of all tips deducted and/or assigned; (iv) statutory liquidated damages equal to three times (3x) the total sum of the foregoing; and (v) payment of Ms. Jones' attorney's fees and costs.

Ms. Jones' IWPCA claim is subject to a ten (10) year statutory recovery period. Pursuant to IWPCA, 820 Ill. Comp. Stat. 115/1, *et seq*., the Club was obligated to pay and/or permit Ms. Jones to keep all monies, gratuities, and wages earned arising from her employment. The damages available under the IWPCA include (i) a return of all kickbacks (house fees) paid; (ii) a return of all tips deducted and/or assigned; (iii) statutory liquidated damages in an equal amount to the total sum of the foregoing; and (iv) payment of Ms. Jones' attorney's fees and costs.

To avoid class/collective action litigation, I am authorized to present a pre-litigation settlement demand to confidentially resolve Ms. Jones' individual claim [redacted]

The Club (including its managers, agents, contractors, and/or employees) is further advised not to attempt directly or indirectly to contact Ms. Jones about her above referenced claims or the settlement of her claims as presented herein. **All communications must go directly through my office**.

Should I learn that any agent on the Club's behalf is attempting to contact Ms. Jones about this matter, attempting to discuss this matter with Ms. Jones, or trying to retaliate or intimidate Ms. Jones for seeking recovery of unpaid wages and damages arising out of the Club's violations of Federal and Illinois law, I will immediately cease settlement discussions and proceed forward to file a lawsuit in the United States District Court (with the assistance of local and Illinois licensed local co-counsel) and seek all immediate injunctive relief necessary to protect Ms. Jones' interests.

Finally, prior to or during Ms. Jones' employment with the Club, it is likely the Club or one of its managers required Ms. Jones to sign a document the Club will now assert constitutes a validly formed and binding arbitration agreement and/or class/collective action waiver. Insofar as Ms. Jones now makes a claim for damages that may fall under such an agreement, I am expressly requesting an opportunity to view and review this document.

Should the Club or fail to respond and/or accept Ms. Jones' herein identified pre-litigation demand and/or refuse to produce a validly formed binding arbitration agreement and/or class/collective waiver, signed and executed by Ms. Jones, by or before Friday, April 14, 2023, Ms. Jones' pre-litigation demand shall be rescinded and I will consider the Club to have knowingly and intentionally waived its potential right to enforce such an agreement bar class/collective action litigation and/or to compel Ms. Jones' claims or the claims of other similarly situated current or former exotic dancers to the forum of arbitration.

I encourage the Club to promptly present this pre-litigation demand letter to the Club's attorney and direct the Club's attorney to contact me at his or her earliest convenience by email ggreenberg@zagfirm.com or on my direct office cell number 202-680-9001.

Very truly yours,

/s/ Gregg C. Greenberg

Gregg C. Greenberg