IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISIS JONES, <br> on behalf of herself and all other similarly situated individuals, <br> <br> Plaintiff, <br> <br> vs. <br> <br> MISS KITTY'S, INC., <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 3:23-CV-1327-MAB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Plaintiff Isis Jones's motion for sanctions (Doc. 43; *see also* Doc. 44). For the reasons explained below, the motion is denied without prejudice to refiling.

### BACKGROUND

Plaintiff filed this putative class/collective action in April 2023 on behalf of herself and other exotic dancers against Miss Kitty's Inc. for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. 115/1 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILL. COMP. STAT. 105/1 *et seq.* (Doc. 1). Plaintiff alleged that Miss Kitty's failed to pay dancers any wages for the hours they worked, unlawfully required dancers to relinquish a portion of the tips they earned, and unlawfully charged dancers a stage fee for each shift that they worked (*Id.*).

In connection with her claims, Plaintiff served written discovery requests on Defendant in August 2023, including Interrogatories, Requests for Production of Documents, and Requests for Admission (*see* Doc. 44-2 (Interrogatories); Doc. 44-3 (RFPs); Doc. 29-1 (Requests for Admission)). Among other things, these discovery requests sought production of information and documents regarding the identity of and contact information for each class member (Doc. 44-2, Interrog. #2; Doc. 29-1, Requests 12–16).

Defendant did not respond to the Requests for Admission and therefore the matters therein were deemed admitted (Doc. 33, pp. 2–3). FED. R. CIV. P. 36(a)(3). Those admissions include that over 100 class members worked or performed as exotic dancers for, at, or in Miss Kitty's Club during the relevant time period and that Defendant was in possession of each class member's legal name and stage name and last known address, cell phone number, and email address (Doc. 29-1, Requests 12–16). Notably, to date Defendant has not moved to withdraw the admissions. *See* FED. R. CIV. P. 36(b).

Defendant did, however, respond to Plaintiff's interrogatories and indicated that it did not have information to identify the dancers or provide their contact information (Doc. 29-4, response to Interrog. #2).[1] Defendant also produced documents in response

---

[1] Interrogatory #2 asked Defendant to "Identify and provide full contact information including addresses, emails, and phone numbers for each person that has worked or performed as an owner, officer, member, manager, supervisor, employee, exotic dancer, DJ, or independent contractor for, at, or in Miss Kitty's at anytime between 2013 through the present. In your response, identify all job titles each individual has, had, and/or currently holds at or with Miss Kitty's." (Doc. 44-2, Interrog. #2). Defendant's response identified Reggie Allen (deceased) and Tony Scruggs as "Managers" and stated "Defendant does not have responses on dancers or independent contractors. Contractor has copies of IPs for one year." (Doc. 29-4, response to Interrog. #2). It is not clear to the Court what "IP" stands for.

to Plaintiff's RFPs, but the Court does not know exactly what documents were produced (*see* Doc. 44-4).

Plaintiff filed her motion for class certification in January 2024 (Doc. 28; *see also* Docs. 29, 31), which Defendant did not oppose. Accordingly, the Court granted the unopposed motion for class certification on June 5, 2024, and a hearing was set to discuss, amongst other things, Defendant's production of class members' names and contact information and how the Class Notice would be disseminated to class members and a proposed schedule for doing so (Doc. 33, p. 12).

At the post-certification hearing on July 2, 2024, defense counsel expressed belief that his client had very limited contact information for the class members. Plaintiff's counsel theorized there may be records of when class members signed in to rent stage time as well as records of the fees that class members paid to Defendant, which could potentially help identify class members.[2] Defense counsel then stated that Defendant's accountant might also be in possession of information that could potentially help identify

---

[2] Counsel's suggestion was based on Defendant's responses to interrogatories #8 and #12. Interrogatory #8 stated: "For the period 2013 through the present, separately state by shift and by week, the total hours Plaintiff worked or performed as an exotic dancer for, at, or in Miss Kitty's." (Doc. 44-2, p. 8). Defendant responded, "Defendant has a record of when Plaintiff signed in to rent stage time. Defendant reserves the right to supplement." (Doc. 29-4, p. 7). Interrogatory #12 stated: "For the period 2013 through the present, separately state by shift and by week, the total amount of money Plaintiff paid to and/or for the benefit of Defendant, any agent of Defendant, and/or any assignee of any defendant as a "tip in," "stage fee," "house fee," "lease fee," and/or any similar payment paid by an exotic dancer to and/or for the benefit of defendant as a condition of working or performing as an exotic dancer for, at, or in Miss Kitty's (Doc. 44-2, p. 9). Defendant responded, "Defendant reserves the right to supplement. It is possible Defendant has records from the last three or four years" (Doc. 29-4, p. 9).

class members. Defense counsel was ordered to consult with his client to determine exactly what information was available (Doc. 36).

On July 19, 2024, Defense counsel produced copies of photo identification cards for eight Class Members (five of which were accompanied by a telephone number) (Doc. 44-5). According to Plaintiff, defense counsel did not provide any explanation, excuse, or justification for the "impotent production" (Doc. 44, pp. 6–7). The dismal production prompted Plaintiff to file the motion for sanctions presently before the Court (Doc. 43; *see also* Doc. 44).

At a follow-up hearing on August 15, 2024, Defense counsel explained that the eight pages of ID cards was all that he was given by his client. The Court indicated that the production did not seem like enough and asked whether any additional information would be forthcoming. Defense counsel explained that when he responded to discovery, he had a feeling there were more names than what was produced, but he was ultimately unfamiliar with how the business operated. Plaintiff's counsel suggested that manager Tony Scruggs might have more information about the identity of the dancers and how they could be reached. Defense counsel said he would speak with his client and impress upon her the seriousness of her discovery obligations and explain what she was required to turn over.

About a month after the hearing, Defendant filed a response in opposition to Plaintiff's motion for sanctions (Doc. 50). The response confirmed that Defendant possessed sign-in sheets, like Plaintiff's counsel suspected (*Id.* at p. 1). Defense counsel represented that the sheets are signed by the dancers on the nights they work and show

the time the dancers arrived and whether they paid the stage rental fee (*Id.*). Defense counsel also produced to Plaintiff's counsel sign-up sheets from September 13 and 14, 2024, which contained 29 names (presumably stage names) of dancers (*see id.*). There is no explanation as to why more sign-in sheets were not produced (*see id.*). Defense counsel likewise did not provide any meaningful explanation at a subsequent hearing on October 3, 2024. He said only that he has stressed to his client that she needed to produce anything and everything that identifies any dancers.

Plaintiff has not yet sought to depose Gail Allen or Tony Scruggs. It also does not appear that Plaintiff ever served Defendant with any follow-up discovery requests aimed at fleshing out the particulars of Defendant's responses to Plaintiff's discovery requests.

## Discussion

Plaintiff asks the Court to impose sanctions for spoliation pursuant to its inherent power to sanction misconduct (as opposed to seeking sanctions under the Federal Rules of Civil Procedure). *See, e.g., Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."). A spoliation sanction is proper where (1) the party had "a duty to preserve evidence because it knew, or should have known, that litigation was imminent" and (2) the materials were intentionally destroyed in bad faith, such as "for the purpose of hiding adverse information." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (citations omitted); *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) (citation

omitted). *See also Ramirez*, 845 F.3d at 776 ("Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith."); *Park v. City of Chicago,* 297 F.3d 606, 615 (7th Cir. 2002) ("[T]he crucial element is not that evidence was destroyed but rather the reason for the destruction."). The moving party bears the burden of establishing both required elements by a preponderance of the evidence. *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (movant bears burden); *Ramirez*, 845 F.3d at 781 ("In civil cases, the facts underlying a district court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence.").

Here, Plaintiff argues, Defendant does not dispute, and the Court agrees that Defendant was under a duty to preserve evidence material to this lawsuit—at the very latest—as of the date she was served with process, which was May 23, 2023 (Doc. 44, pp. 2–4; *see* Doc. 50).[3] Therefore, the first element is satisfied. When it comes to the second element, however, Plaintiff has not carried her burden to show that Defendant more likely than not destroyed evidence in bad faith in order to deprive her of using it.

To be clear, Defendant's production of identification cards for only eight dancers—which occurred long after this information was initially requested through proper

---

[3] It is possible that Defendant's duty to preserve arose as early as March 30, 2023, when Plaintiff's counsel sent a pre-litigation demand letter to Gail Allen (*see* Doc. 44, pp. 2–3; Doc. 44-1). However, such a finding cannot be made at this point without further development and presentation of facts showing that Ms. Allen actually received the letter and understood (or was told) that she had a preservation duty, which the letter itself does not mention.

discovery requests—as well as the lack of any meaningful explanation for the limited production, certainly raises an eyebrow. It also begs a host of questions. Most notably, why are there records for only eight dancers when the class is thought to consist of over 100 dancers, (*see Doc*. 33, p. 6), and why weren't these records produced sooner? According to Plaintiff, Defense counsel did not provide any explanation, excuse, or justification for the "impotent production" (Doc. 44, pp. 6–7). But as far as the Court can tell, Plaintiff also never formally asked for an explanation or made any attempt to pin down Ms. Allen on what she did to comply with her discovery obligations. And it is Plaintiff's burden, as the party moving for sanctions, to prove that sanctions are warranted by pointing to something from which the Court can conclude that records were intentionally destroyed in bad faith.

But rather than develop any of the factual information typically used to support a request for sanctions based on spoliation, Plaintiff simply tries to argue that it can be inferred from Defendant's scant production of identification records that Defendant destroyed (or at least failed to preserve) the records for the remaining class members in order to make it impossible for Plaintiff to proceed on her class claims (*see* Doc. 44, p. 8). But on the record currently before it, the Court is not convinced that this inference can be reasonably drawn. This inference is supported solely by Plaintiff's speculation. And the Court cannot impose sanctions based on speculation and assumptions. Sanctions can only be imposed based on an evidentiary finding. And here, as outlined below, there is a complete dearth of facts from which the Court could infer that Defendant more likely than not destroyed evidence in order to hide information from Plaintiff.

To begin with, it is not clear that the identification records Plaintiff seeks ever actually existed as to every class member (*see* Doc. 44). Plaintiff did not, for example, provide any information about Defendant's normal practice for hiring dancers, such as whether the dancers were required to provide particular information (*e.g.,* their legal name and age) and/or documentation (*e.g.,* state issued identification card), fill out any forms, etc. (*see* Doc. 44). Assuming the dancers were required to do so, there is likewise no evidence as to whether it was Defendant's normal practice to retain such information, the manner in which it was retained (e.g., electronic record, paper file, etc.), the location where it was retained, and the duration for which it was retained (*see* Doc. 44).

Even if Plaintiff is correct that the identification records did indeed exist at one point for every class member, there is no evidence at this point to show, or give rise to an inference, that that the records were destroyed or that the destruction was in bad faith (*see* Doc. 44). For example, there is no evidence as to what happened to the records—that is how they were purportedly destroyed or otherwise made unavailable (*see id.*). There is also no evidence before the Court as to who was responsible for the destruction/unavailability of the records or when the purported destruction occurred (*see id.*).[4] More generally speaking, there is no information as to what Gail Allen knew

---

[4] The Court notes that Defendant represented in its brief that Gail Allen took over operations at Miss Kitty's in August 2022 and, prior to that, her son (who is now deceased) ran Miss Kitty's and removed all records when he left (Doc. 50, p. 1). However, these representations are not supported by affidavits or deposition testimony. Accordingly, the Court cannot take these assertions to be true at this stage. *E.g., Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1074 (N.D. Ill. 2015) ("Unsworn statements by attorneys in briefs are not evidence on which the Court can rely.") (citing *Mitze v. Colvin,* 782 F.3d 879, 882 (7th Cir. 2015)); *Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) ("[U]nsupported statements of lawyers in briefs are not evidence, do not count, and are given no weight" and collecting cases). The Court notes these representations simply to illustrate that Plaintiff has not sufficiently developed the record regarding

about the necessity of preserving information potentially relevant to this lawsuit. There is also no information as to what, if anything, Ms. Allen relayed to Miss Kitty's manager, Tony Scruggs. The Court is likewise without any evidence explaining whether Miss Kitty's had a systematic procedure for retaining documents potentially relevant to this lawsuit, and if so, what that procedure was and where and how the documents were retained. And finally, the Court is without any actual evidence regarding what type of search, if any, Ms. Allen conducted and what steps she took to ensure complete production.

In short, Plaintiff's counsel has every reason to question whether Defendant's production is faulty and incomplete. However, it appears to the Court that Plaintiff jumped the gun in filing the instant motion for sanctions before fully developing a record surrounding the circumstances of Defendant's discovery responses. Based on the record currently before the Court, there is simply no factual basis to conclude that Defendant intentionally destroyed any identification records in bad faith. Additionally, while both parties have suggested that there may be other types of records through which dancers could potentially be identified, Plaintiff did not make any argument or present any facts on this point (*see* Doc. 44), and therefore the Court declines to address it.

---

Defendant's purported bad faith destruction of documents.

CONCLUSION

For the reasons explained above, Plaintiff's motion for sanctions (Doc. 43) is **DENIED**. The denial of Plaintiff's motion is without prejudice to refiling at a later date.

IT IS SO ORDERED.

DATED: November 5, 2024

s/ Mark A. Beatty  
**MARK A. BEATTY**  
**United States Magistrate Judge**