IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN STRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| ISIS JONES | ) | |
| | ) | |
| ***On Behalf of Herself and All Other*** | ) | |
| ***Similarly Situated Individuals*** | ) | |
| | ) | Case No. 3:23-cv-01327-MAB |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MISS KITTY'S, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AS TO CLASS-WIDE ILLINOIS STATE LAW CLAIMS

Plaintiff Isis Jones ("Plaintiff"), individually, and as Class Representative on behalf of the members of the IMWL Class[1] and IWPCA Class[2] (collectively, Plaintiff and the members of the IMWL Class and the IWPCA Class are referred to herein as "Plaintiffs") through Class Counsel, submits this Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment against Defendant Miss Kitty's, Inc. ("Defendant")[3] as to its liability on Plaintiffs' class-wide claims arising under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*.

---

[1] The Federal Rule 23(b)(3) Court Certified IMWL Class includes "all individuals who worked or performed as an exotic dancer for, in or at Defendant's Club during the period April 2020 through the final date of judgment in this case" ("the IMWL Class").

[2] The Federal Rule 23(b)(3) Court Certified IWPCA Class includes "all individuals who worked or performed as an exotic dancer for, in, or at Defendant's Club during the period April 2013 through the final date of judgment in this case." ("the IWPCA Class").

[3] Defendant owns and operates the Miss Kitty's Gentlemen's Club, located at 5200 Bunkum Road, Washington Park, Illinois 62204, referred to herein as "Defendant's Club."

Pursuant to Fed. R. Civ. Pro. 56(a), Plaintiff requests this Court grant Partial Summary Judgment (i) finding Defendant liable to Plaintiffs under the IMWL for "free and clear" Illinois Minimum Wage Rate for each hour worked in an amount to be determined at trial, treble damages, and interest at the IMWL statutory rate; and (ii) finding Defendant liable to Plaintiffs under the IWPCA for unlawfully deducted or unreimbursed "stage rental fees" in an amount to be determined at trial, plus interest at the IWPCA statutory rate. As described herein, Partial Summary Judgment on Defendant's liability to Plaintiffs under the IMWL and IWPCA is well supported by the undisputed factual record and is in full accord with strong legal precedent.

## I.   STATEMENT OF MATERIAL FACTS [4]

Plaintiffs rely upon Plaintiff's Declaration, attached as Exhibit 1; Defendant's Responses to Plaintiff's Interrogatories ("Defendant's Interrogatory Responses"), attached as Exhibit 2; Plaintiff's August 17, 2023, Requests for Admission to which Defendant **_did not_** respond and are therefore deemed admitted ("Defendant's Admissions"), attached as Exhibit 3[5]; and Defendant's Rules for All Dancers, referenced and incorporated within Defendant's Interrogatory Responses and produced by Defendant in response to Plaintiff's First Set of Document Requests ("Miss Kitty's Rules"), attached as Exhibit 4.

1.   Defendant's Club is a strip club, featuring nude and semi-nude female exotic dancers. *See* Ex. 3 - Defendant's Admissions, p. 2, No. 1.

---

[4] In compliance with Local Rule 56.1(a), in the following separately numbered Paragraphs, Plaintiff presents her Statement of Material Facts, each accompanied by direct citation to the record, setting forth a relevant uncontested material fact bearing directly on one or more legal issues entitling Plaintiff to Partial Summary Judgment.

[5] *See* Federal Rule 36(a)(3) (A statement in a request for admission is deemed admitted if not responded to within 30 days of service).

2.      Plaintiff and more than One Hundred (100) members of the IMWL Class and IWPCA Class worked as exotic dancers within Defendant's Club.  *See* Ex. 3 - Defendant's Admissions p. 4, Nos. 11-12; Ex.1 - Plaintiff's Declaration, p. 5, ¶ 26.

3.      Plaintiffs' primary job duty while working as exotic dancers within Defendant's Club was to interact with Defendant's customers and to perform strip tease and private and semi-private provocative or erotic dances for Defendant's customers' entertainment.  *See* Ex. 3 - Defendant's Admissions, p. 3, No. 10; Ex. 1 – Plaintiff's Declaration, p. 2, ¶¶ 6-7.

4.      Plaintiffs' right or ability to work as exotic dancers within Defendant's Club was subject to the selection and discretion of Defendant's managers.  *See* Ex. 3 – Defendant's Admissions, p. 5, No. 19; Ex. 1 – Plaintiff's Declaration, p. 3, ¶ 13.

5.      Once hired, the relationship between Defendant and Plaintiffs was ongoing and at-will, rather than *ad hoc* or limited to a special appearance.  *See* Ex. 3 – Defendant's Admissions, p. 2, No. 2; Ex. 1 – Plaintiff's Declaration, p. 8, ¶ 8.

6.      Defendant had the authority to dictate if, when, and during what shifts Plaintiffs worked as exotic dancers within Defendant's Club.  *See* Ex. 3 – Defendant's Admissions, pp. 5-6, Nos. 19, 23; Ex. 1 – Plaintiff's Declaration, p. 3, ¶ 17.

7.      Defendant held the authority to terminate or suspend Plaintiffs from working as exotic dancers within Defendant's Club.  *See* Ex. 3 – Defendant's Admissions, p. 6, No. 22; Ex. 1 – Plaintiff's Declaration, p. 3, ¶16; Ex. 2 - Defendant's Interrogatory Responses, p. 7, No. 7.

8.      While working as exotic dancers within Defendant's Club, Plaintiffs were required to abide by the rules set forth by Defendant.  *See* Ex. 1 – Plaintiff's Declaration, p. 4, ¶ 20; Ex. 2 – Defendant's Interrogatory Responses, p. 10, Answer 16; *see also* Ex. 4 - Miss Kitty's Rules.

9.      While working as exotic dancers within Defendant's Club, Defendant created, implemented, posted, and held the authority to enforce rules that forbade Plaintiffs from: (a) leaving Defendant's Club for food or smoking breaks; (b) refusing bag checks from security; (c) removing their "T-bar" while on the pole and while giving lap dances; (d) having extras in the VIP Room; (e) deviating from the wagon wheel order to get on the pole unless giving lap dances or in the VIP room; (f) leaving the stage before being relieved by the next dancer; (g) accepting any medium of payment other than cash for the VIP Room; (h) using any bathroom within other than the locker room bathroom; (i) having cell phones on the floor; (j) using the gambling machines prior to full payment of rent; (k) Entry to work as an exotic dancer within Defendant's Club without first paying rent; (l) having chewing gum on the floor; (m) performing a dance for a customer that does not have a wristband; (n) receiving rides home from Defendant's customers; (o) running around Defendant's Club while naked; (p) having open tabs; (q) exiting the stage without spraying and wiping down the pole after use; (r) leaving Defendant's Club prior to close if she is the last dancer in to work; (s) starting work after 10:59 pm; (t) having drinks in private rooms; or (u) having glasses or bottles in dressing rooms. *See* Ex. 4 - Miss Kitty's Rules, pp. 1-2.

10.     Defendant set and controlled the prices Plaintiffs were required to charge Defendant's customers for private and semi-private dances, as well as the policies and procedures Plaintiffs had to follow in giving such dances.  *See* Ex. 3 – Defendant's Admissions, p. 6, No. 24; Ex. 1 – Plaintiff's Declaration, p. 3, ¶ 18.

11.     Defendant bore the cost and investment of operating Defendant's Club in an average monthly amount of $10,000.00 to $20,000.00, including payments or investments by Defendant for insurance, rent, utilities, and beer and liquor.  *See* Ex. 2 – Defendant's Interrogatory Responses, p. 10, Response 17.

12.      Defendant provided music for Plaintiffs to dance for Defendant's customers within Defendant's Club by streaming music on Spotify through computers within Defendant's Club.  Ex. 2 – Defendant's Interrogatory Responses, p. 11, Response 20.

13.     Defendant advertised to recruit Plaintiffs to apply and work as exotic dancers within Defendant's Club by affixing a sign on the fence outside of Defendant's Club that communicated Defendant was hiring entertainers.   Ex. 2 – Defendant's Interrogatory Responses, pp. 11-12, Response 23.

14.     Defendant classified all Plaintiffs as non-employee, independent contractors.  Ex. 2 – Defendant's Interrogatory Responses, pp. 5-7, Responses 3, 6; Ex. 3 – Defendant's Admissions, pp. 2-3, Admissions 3-5.

15.     Defendant never classified Plaintiffs as employees.  *See* Ex. 2 – Defendant's Interrogatory Responses, pp. 5-6, Response 4; Ex. 3 – Defendant's Admissions, p. 2, No. 4.

16. Defendant never paid wages or any other form of compensation to Plaintiffs for the hours Plaintiffs worked as exotic dancers within Defendant's Club.   *See* Ex. 2 – Defendant's Interrogatory Responses, pp. 8-9, Responses 9-11; Ex. 3 – Defendant's Admissions, pp. 3, 5, Nos. 6, 20; Ex. 1 – Plaintiff's Declaration, p. 3, ¶ 14.

17. Defendant required Plaintiffs to pay Defendant a mandatory "stage rental fee" of $40.00 for each day shift Plaintiffs worked as exotic dancers within Defendant's Club.  *See* Ex. 2 – Defendant's Interrogatory Responses, p. 5, Response 3; Ex. 1 – Plaintiff's Declaration, p. 4, ¶ 19.

18. Defendant required Plaintiffs to pay Defendant a mandatory "stage rental fee" of $40.00 for each day shift and $50.00 for each night shift Plaintiffs worked as exotic dancers within Defendant's Club.   *See* Ex. 2 – Defendant's Interrogatory Responses, p. 5, Response 3; Ex. 1 – Plaintiff's Declaration, p. 4, ¶ 19.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party may seek Summary Judgment upon all or any part of a claim or defense asserted. The Court shall grant Summary Judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a Summary Judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for Summary Judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive Summary Judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assocs., Inc*, 330 F.3d 991, 994 (7th Cir. 2003)).

## **ARGUMENT**

**I.     Good Cause Exists for this Court to Enter Summary Judgment Against Defendant as to Liability Under the IMWL.**

**A.     Defendant qualified as Plaintiff and each Class Member's Employer under the IMWL.**

At all times, Defendant classified Plaintiffs as non-employee, independent contractors.  *See* Ex. 2 – Defendant's Interrogatory Responses, pp. 5-7, Responses 3, 6; Ex. 3 – Defendant's Admissions, pp. 2-3, Admissions 3-5.   Defendant's classification, however, is ***not**** dispositive of whether Plaintiffs qualified as Defendant's employees under the IMWL.[6]  Instead, employee status under the IMWL is determined through an "economic reality" test, which scrutinizes the potential employee's "economic dependence" on the potential employer. *Godinez v. Classic Reality Group-II, Inc*., 2024 U.S. Dist. LEXIS 125843, at *5 (N.D. Ill. July 16, 2024).

---

[6] The IMWL's protections apply to "any individual permitted to work by an employer in an occupation." 820 ILCS  105/3(d).

The "economic reality" factors analyzed by the Court include: (i) the degree of control the alleged employer exercised over the individual; (ii) the extent to which the services rendered by the individual are an integral part of the alleged employer's business; (iii) the extent of the relative investments of the individual and alleged employer; (iv) the degree to which the individual's opportunity for profit and loss is determined by the alleged employer; (v) the permanency of the relationship; and (vi) the skill required in the claimed independent operation. *See* 56 Ill. Admin. Code §210.110; *Brant v. Schneider Nat'l, Inc*., 43 F.4th 656, 665 (7th Cir. 2022) (citing *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987)). In this case, each factor supports the inescapable conclusion that Defendant was Plaintiffs' employer, subject to the wage payment requirements of the IMWL.

### i.    Defendant's Control Over Plaintiffs Within Defendant's Club Evinces an Employee-Employer Relationship.

"Evidence displaying an 'employer's dominance over the manner and method of how work is performed' suggests control by an employer." *Harris v. Skokie Maid & Cleaning Service*, 2013 U.S. Dist. LEXIS 97117, at *7 (N.D. Ill 2013) (quoting *Harper v. Wilson*, 302 F. Supp. 2d 873, 878 (N.D. Ill. 2004)).  Here, Defendant: (i) created, implemented, posted, and held the authority to enforce rules controlling Plaintiffs' work as exotic dancers within Defendant's Club; (ii) controlled and administered the hiring process and determined whether Plaintiffs would be hired to work as exotic dancers within Defendant's Club; (iii) controlled and administered discipline, including suspension and termination of Plaintiffs' right or ability to continue to work as exotic dancers within Defendant's Club; (iv) controlled and administered when or if Plaintiffs could work a desired shift within Defendant's Club; (v) set the pricing for private and semi-private dances offered by Plaintiffs to Defendant's customers within Defendant's Club; and (vi) controlled the music Plaintiffs danced to for the entertainment of Defendant's customers within Defendant's

8

Club. *See* Ex. 4 – Miss Kitty's Rules, Ex. 3 – Defendant's Admissions, Nos. 3-5, 7, 8, 19, 22-24; Ex. 1 - Plaintiff's Declaration, ¶¶ 11-13, 16-18, 20; and Ex. 2, Defendant's Interrogatory Responses, Responses 3, 5, 6, 7, 16, 20.

For purposes of the proper focus of economic control, Defendant asserted total and unfettered control over all meaningful aspects of Plaintiffs' work as exotic dancers within Defendant's Club. As such, this factor weighs entirely in favor of a finding of Plaintiffs' employee status. *See Mays v. Rubiano, Inc*., 560 F. Supp. 3d 1230, 1236 (N.D. Ind. 2021) (finding that the dancers were employees, and noting that the dancers were "expected to comply with an extensive list of rules while working" that went "beyond what is normally asked of an independent contractor."); *see also Fares v. H B & H LLC*, 2023 U.S. Dist. LEXIS 103148, at *13 (E.D. Wis. 2023) (granting Partial Summary Judgment on the finding exotic dancers qualified as FLSA employees under similar factual circumstances, but dismissing the case based on a question of FLSA coverage not before this Court); *Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) ("*Reich I*")*I*(finding similar indicia of control as indicating that dancers' "economic status is inextricably linked to those conditions over which defendants have complete control.").

ii.    **Defendant's Investment in Defendant's Club is Consistent with an Employee – Employer Relationship.**

Defendant invested substantially in the operation of Defendant's Club, in an average monthly amount of $10,000.00 to $20,000.00. *See* Ex. 2, Defendant's Interrogatory Answer 17. Defendant's investment included payments or investments for insurance, rent, utilities, and beer and liquor. *Id.*    Plaintiffs, by contrast, made no investment in Defendant's Club. Instead, the only cost Plaintiffs bore related to Defendant's Club was payment to Defendant of a $40.00 - $50.00 "stage rental fee" kickback, paid to Defendant as a mandatory condition for each shift

Plaintiffs worked within Defendant's Club.  *See* Ex. 2, Defendant's Interrogatory Answer 3; Ex. 1, Plaintiff's Declaration at ¶ 19.

The stark contrast in relative investments between the Parties underscores Plaintiffs' economic dependence.  Defendant, as the business owner operator, relied on itself and its substantial monetary investment to ensure the financial success of Defendant's Club.  By contrast, with only a nominal relative investment, Plaintiffs were wholly dependent upon Defendant and its investment in the success of Defendant's Club to earn tips by working as exotic dancers within Defendant's Club.  This dependency dynamic fully supports the finding of Plaintiffs' employee status. *See Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 328 (5th Cir. 1993) (finding that a dancer's nominal investments related to her exotic dancer duties pale in comparison to a nightclub that "owns the liquor license, owns the inventory of beverages and refreshments, leases fixtures for the nightclub (e.g., the stage and lights), owns sound equipment and music, maintains and renovates the facilities, and advertises extensively.").

### iii.    Plaintiffs' Opportunity for Profit and Loss was Entirely Determined by Defendant.

Plaintiffs' opportunity to earn tips by performing exotic dancer work duties within Defendant's Club was no different than any other tipped employment relationship.  At all times, (i) Defendant controlled whether Plaintiffs were permitted work as exotic dancers within Defendant's Club; (ii) Defendant had the authority to dictate if, when, and during what shifts Plaintiffs could work as exotic dancers within Defendant's Club; (iii) Plaintiffs performed exotic dancer work duties within Defendant's Club subject to rules created, set, posted, and enforced by Defendant; (iv) Defendant held the authority to terminate or suspend Plaintiffs from working as exotic dancers within Defendant's Club; and most critically, (v) Defendant set and controlled the prices Plaintiffs were required to charge Defendant's customers for private and semi-private

dances, thereby directly controlling how much money Plaintiffs could earn by working as exotic dancers within Defendant's Club. *See* Ex. 4 – Miss Kitty's Rules; Ex. 3 – Defendant's Admissions, Nos. 19, 22-24; Ex. 1 - Plaintiff's Declaration at ¶¶13, 16-18; Ex. 2 – Defendant's Interrogatory Responses, Response 7.

The foregoing confirms that any opportunity for Plaintiffs to earn tips by working as exotic dancers within Defendant's Club was entirely dependent upon Defendant's control and discretion. This economic reality is wholly consistent with an employee-employer relationship. *See Reich I,* 890 F.Supp. at 593") (finding that "[e]ntertainers do not control the key determinants of profit and loss of a successful enterprise"); *see also Brock v. Mr. W Fireworks, Inc*., 814 F. 2d 1042, 1051 (5th Cir. 1987), cert. denied, 484 U.S. 924 (1987) (finding the putative employees "far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.").

### iv.    All Other Factors Weigh Strongly and Directly in Favor of Employee Status.

The remaining economic reality factors customarily analyzed by courts to determine whether an individual is an 'employee' include: (i) the degree of skill required for the work; (ii) the permanence of the working relationship; and (iii) the degree to which the services rendered are an integral part of the putative employer's business. Here, analysis of each factor supports a finding favoring Plaintiff and the Class Members' status as Defendant's employees.

First, the "skill" factor weighs in favor of Plaintiffs' employee status because Plaintiffs did not perform high-skilled or specialized duties within Defendant's Club. Plaintiffs' primary job duty while working as exotic dancers within Defendant's Club was to interact with Defendant's customers and to perform strip tease and private and semi-private provocative or erotic dances for the Defendant's customers' entertainment and enjoyment. *See* Ex. 3 – Defendant's Admissions,

No. 10; Ex. 1 – Plaintiff's Declaration, ¶¶ 6,7. Such work duties are consistently regarded by courts as of lower skill and consistent with employee status. *See Mays,* 560 F. Supp. 3d at 1236 ("exotic dancing doesn't require any special skills, supporting employment."); *Degidio v. Crazy Horse Saloon & Rest., Inc*, 2015 U.S. Dist. LEXIS 132558, at *38 (D.S.C. 2015) ("Like others, this Court declines to characterize [willingness to take one's clothes off] as a 'skill.'"); *Stevenson v. Great Am. Dream, Inc.*, 2013 U.S. LEXIS 181551, at *5 (N.D. Ga. 2013) ("Taking your clothes off on a nightclub stage and dancing provocatively are not the kinds of special skills that suggest independent contractor status.").

Next, Plaintiffs plainly performed work duties integral to Defendant's business operation. Defendant operated a strip club -- and Plaintiffs were among Defendant's strippers. *See* Ex. 3 – Defendant's Admissions, Nos. 1, 10-12; Ex. 1 – Plaintiff's Declaration, ¶¶ 6, 7, 26.   This factor therefore weighs in favor of Plaintiffs' employee status. *See Verma v. 3001 Castor, Inc*., 2014 U.S. Dist. LEXIS 88459, at *10 (E.D. Pa. 2014) ("Given that Defendant markets itself on the basis of providing topless dancers, it cannot credibly argue that the services performed by dancers are not an integral part of its business."); *Butler*, 2013 U.S. Dist. LEXIS 159417, at *5 ("[A]ny contention that the exotic dancers were not integral to the operation of Norma Jean's flies in the face of logic."); *Hart v. Rick's NY Cabaret Int'l, Inc*., 967 F.Supp.2d 901, 921 (S.D.N.Y. 2013) ("No reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers.").

Finally, Plaintiffs' tenure with Defendant was consistent with a typical employee relationship.  To start, Plaintiffs' right or ability to work as exotic dancers within Defendant's Club was subject to the selection and discretion of Defendant's managers or agents.  *See* Ex. 3 – Defendant's Admissions, No. 19; Ex. 1 – Plaintiff's Declaration, at ¶13.   Once hired, the

relationship between Defendant and Plaintiffs was ongoing and at-will, rather than *ad hoc* or limited to a special appearance. *See* Ex. 3 – Defendant's Admissions, No. 2; Ex. 1 – Plaintiff's Declaration, ¶8. Further, while employed, Defendant had the authority to dictate if, when, and during what shifts Plaintiffs worked as exotic dancers within Defendant's Club. *See* Ex. 3, Defendant's Admissions at 19, 23; Ex. 1 – Plaintiff's Declaration, ¶17. Additionally, throughout Plaintiffs' entire employment period, Defendant controlled all aspects of Plaintiffs' work as exotic dancers within Defendant's Club by and through rules Defendant created, set, posted, and held full authority to enforce. *See* Ex. 4, Miss Kitty's Rules. Finally, at all times, Defendant held the authority to discipline, suspend, or terminate Plaintiffs from working as exotic dancers within Defendant's Club. *See* Ex. 3 – Defendant's Admissions, No. 22; Ex. 1 – Plaintiff's Declaration, ¶16; Ex. 2 – Defendant's Interrogatory Responses, Response 7. Consequently, the at-will duration of Plaintiffs' relationship with Defendant is indistinguishable from any other at-will employment relationship. *See Manasco v. Best in Town, Inc.*, 2023 U.S. Dist. LEXIS 162313, at *34-35 (N.D. Ala. 2023) ("[D]ancers' work at other clubs in addition to The Furnace does not appear meaningfully different than any other employee working multiple jobs." And finding, "[o]n the whole, the undersigned finds this factor weighs weakly against employee status." But noting, "courts have generally placed little emphasis on this factor in the exotic dancer context because exotic dancers tend to be 'transient or itinerant.'"). (citing *Harrell v. Diamond A Ent., Inc.*, 992 F. Supp. 1343, 1352 (M.D. Fla. 1997); *Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011)).

Each factor considered above and the totality of the circumstances of this case dictates that Defendant qualified as Plaintiffs' employer under the IMWL. *See Mays, 560 F. Supp. 3d at 1230* ("In sum, though some factors weigh in favor of independent contractor status, the economic

reality of the relationship here is one of employer-employee. In making this finding, the court joins

a growing chorus of courts that have concluded likewise.") (citing *Gilbo v. Agment, LLC*, 831 F.

Appx. 772, 778 (6th Cir. 2020); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 232 (3rd Cir.

2019); *McFeeley*, 825 F.3d at 242; *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir.

1993); *Hart*, 967 F. Supp. 2d at 922; *Clincy*, 808 F. Supp. 2d at 1350; *Thompson v. Linda & A.,

Inc.*, 779 F. Supp.2d 139, 151 (D.D.C. 2011); *Morse v. Mer Corp.*, 2010 U.S. Dist. LEXIS 55636,

18 (S.D. Ind. 2010) (applying the *Lauritzen* factors); *Harrell*, 992 F. Supp. at 1353-54.

### B. Defendant is liable to Plaintiff and the Members of the IMWL Class for Unpaid Wages at the Full "Free and Clear" Illinois Minimum Wage Rate, Plus Treble Damages, and Interest at the IMWL Statutory Rate.

Because Defendant qualified as Plaintiff and each member of the IMWL Class's employer

under the IMWL, the IMWL required Defendant to pay Plaintiff and the members of the IMWL

Class wages for all hours worked as exotic dancers within Defendant's Club at an hourly rate equal

to or greater than the full applicable Illinois Minimum Wage Rate. *See* 820 ILCS § 105/4(a).[7]

Here, Defendant never paid wages or any other form of compensation to Plaintiff or the

members of the IMWL Class for hours worked as exotic dancers within Defendant's Club.  *See*

Ex. 2 – Defendant's Interrogatory Responses, Responses 9-11; Ex. 3 – Defendant's Admissions,

Nos. 6, 20; Ex. 1 – Plaintiff's Declaration, ¶14.  Defendant's failure to pay any wages to Plaintiff

or the members of the IMWL Class constitutes a *per se* class-wide violation of the IMWL. *See*

*Conley v. Team Info Age*, 2004 U.S. Dist. LEXIS 1007 (N.D. Ill. 2004) (An employer's failure to

---

[7] Per 820 ILCS § 105/4, during the period relevant to this action, the Illinois Minimum Wage
Rate was as follows:  (i) April 2020 - June 30, 2020:  $9.25 per hour; (ii) July 1, 2020 -
December 31, 2020:  $10.00 per hour; (iii) January 1, 2021 - December 31, 2021:  $11.00 per
hour; (iv) January 1, 2022 - December 31, 2022:  $12.00 per hour; (v) January 1, 2023 -
December 31, 2023:  $13.00 per hour; January 1, 2024 - December 31, 2024:  $14.00 per hour;
and January 1, 2025 – the date of judgment:  $15.00 per hour.

pay any wages to an employee constitutes a violation of the IMWL's requirement that employees

are paid wages at or above the applicable Illinois Minimum Wage rate for all hours worked.).

To remedy Defendant's IMWL violation, this Court must ensure Plaintiff and the

members of the IMWL Class recover back wages at the "free and clear" Illinois Minimum Wage

Rate.  "Federal labor regulations require that wages must be paid 'free and clear,' meaning that

job-related expenses primarily for the benefit of the employer (such as tools or uniforms) can't

be charged to the employee if the expenses would drive the employee's pay below minimum

wage." *Rechtoris v. Dough Mgmt., Inc*., 2019 U.S. Dist. LEXIS 59617, *3 (N.D. Ind. 2019)

(quoting 29 C.F.R. § 531.35, parentheses in original). "The wage requirements of the [FLSA]

will not be met where the employee 'kicks-back' directly or indirectly to the employer...the

whole or part of the wage delivered to the employee." *Id*. "***In this specific context, Illinois***

***minimum wage law is interpreted consistently with the federal regulations***."  *See Burton v.*

*DRAS Partners, LLC*, 2019 U.S. Dist. LEXIS 185697, at *11 (N.D. Ill. 2019) (emphasis

supplied) (citing *Perrin v. Papa John's Int'l., Inc*., 2013 U.S. Dist. LEXIS 181749, *21 n.5 (E.D.

Mo. 2013) (citing 56 Ill. Admin. Code § 210.120).

In this case, for Plaintiff and the members of the IMWL Class to recovery a "free and

clear" recovery at the Illinois Minimum Wage Rate, Defendant must first reimburse all "stage

rental fee" kickback payments it deducted from Plaintiff and the members of the IMWL Class.

*See Butler v. PP&G, Inc*., 2023 U.S. Dist. LEXIS 90343, *15 (D. Md. 2023). ("The FLSA and,

consequently, the [analogous state law] include a long-standing requirement that '[a]n

employee's wages must be 'free and clear,' and an employer violates the FLSA where kickbacks

'directly or indirectly to the employer or to another person for the employer's benefit' reduce the

employee's compensation below the minimum wage.'") (quoting *Moodie v. Kiawah Island Inn*

*Co., LLC*, 124 F. Supp. 3d 711, 717 (D.S.C. 2015) (citing 29 C.F.R. § 531.35); *see also*

*McFeeley v. Jackson St., Entm't, LLC*, 2015 U.S. Dist. LEXIS 58805, at *1 (D. Md. 2019)

(upholding jury instructions estimating an exotic dancer plaintiff's damages under the FLSA and

[state minimum wage statue] based on "the number of weeks [the employee] worked during the

applicable time frame, the schedule she kept, the number of hours she worked each week, ***and***

***the weekly amount she had to pay to Defendants***" (emphasis added)); *see also Paige*, 2017 U.S.

Dist. LEXIS 6787, at *5.

      Here, Defendant required Plaintiff and the members of the IMWL Class to pay Defendant

a mandatory "stage rental fee" of $40.00 for each day shift and $50.00 for each night shift

Plaintiff and the members of the IMWL Class worked as exotic dancers within Defendant's

Club.  *See* Ex. 2 – Defendant's Interrogatory Responses, Response 3; Ex. 1- Plaintiff's

Declaration, ¶ 19.  Consequently, to ensure Plaintiff and the members of the IMWL Class

recover "free and clear" back wages at the Illinois Minimum Wage Rate, this Court should find

Defendant liable to Plaintiff and the members of the IMWL Class for (i) reimbursement of all

"stage rental fee" kickbacks paid to Defendant, plus (ii) payment of for all hours worked at the

Illinois Minimum Wage Rate.

      In this case, Defendant's IMWL liability to Plaintiff and the members of the IMWL Class

spans the period April 2020 through the date of judgment.  Before February 19, 2019, the IMWL

read:

> If any employee is paid by his employer less than the wage to
> which he is entitled under the provisions of this Act, the employee
> may recover in a civil action *the amount of any such*
> *underpayments* together with costs and such reasonable attorney's
> fees as may be allowed by the Court, and damages of 2% *of the*
> *amount of any such underpayments for each month following the*
> *date of payment during which such underpayments remain unpaid.*

820 ILCS§105/12 (effective as of July 14, 2006) (emphasis added); *see also* EMPLOYMENT –

COMPENSATION AND SALARIES – HOURS OF LABOR, 2006 Ill. Legis. Serv. P.A. 94-

1025 (S.B. 2339).

The 2006 version of the IMWL did not include treble damages.  However, when the

IMWL was prosecuted in conjunction with the FLSA, the two-percent penalty enacted in the

2006 version of the IMWL was regarded as mandatory and not duplicative of the FLSA

liquidated damages provision. *See Burton*, 2019 U.S. Dist. LEXIS 185697, at *12.

On February 19, 2019, the General Assembly amended the IMWL as follows:

> If any employee is paid by his employer less than the wage to
> which he is entitled under the provisions of this Act, the employee
> may recover in a civil action *treble the amount of any such*
> *underpayments* together with costs and such reasonable Attorney's
> fees as may be allowed by the Court, and *damages of 5% of the*
> *amount of any such underpayments for each month following the*
> *date of payment during which such underpayments remain unpaid.*

820 ILCS 105/12(a) (emphasis added).

Following the 2019 IMWL amendment, Courts now recognize the mandatory nature of

both the treble damages and interest components of the IMWL damages provision. *See Burton*,

2019 U.S. Dist. LEXIS 185697, at *12 (applying IMWL 5% interest and IMWL trebled damages

on and after February 19, 2019).  Consequently, in this case, in addition to back wages calculated

at the "free and clear" Illinois Minimum Wage Rate, this Court should hold Defendant liable to

Plaintiff and the members of the IMWL Class under the IMWL for treble damages ***plus*** 5%

interest for each month of underpayment from April 2020, through the date of judgment in this

case.

II.    **Defendant is Liable to Plaintiff and the Members of the IWPCA Class for Unlawful Deductions or Unreimbursed Expenditures in Violation of the IWPCA, Plus Interest at the IWPCA Statutory Rate.**

The IWPCA applies to all employers and employees in Illinois. 820 ILCS §115/1.  Under the IWPCA, Defendant automatically qualified as Plaintiff and the members of the IWPCA Class's employer unless Defendant can prove all three (3) elements of the independent contractor exemption. *Costello v. BeavEx, Inc*., 810 F.3d 1045, 1059 (7th Cir. 2016).

For Defendant to meet its burden of proving applicability of the independent contractor exemption, Defendant is required to show (i) Plaintiff and the members of the IWPCA Class have been and will continue to be free from control and direction over the performance of their work; (ii) Plaintiff and the members of the IWPCA Class performed work which is either outside the usual course of Defendant's business; and (iii) Plaintiff and the members of the IWPCA Class are in an independently established trade, occupation, profession or business. *Id*. (citing 820 ILCS § 115/2.  Here, the record confirms Defendant cannot satisfy any element of the exception.

To the first element, Defendant asserted total control over Plaintiff and the Class Members' work within Defendant's Club.  Defendant: (i) set and controlled the enforcement of rules applicable to Plaintiff and the members of the IWPCA Class's work as exotic dancers within Defendant's Club; (ii) controlled and administered the hiring process and determined if Plaintiff or any of the members of the IWPCA Class would be hired to work as exotic dancers within Defendant's Club; (iii) controlled and administered discipline, including suspension and termination of Plaintiff and the other members of the IWPCA from working as exotic dancers within Defendant's Club; (iv) controlled and administered when or if Plaintiff or any of the other members of the IWPCA Class could work a desired shift as an exotic dancer within Defendant's Club; (v) set the pricing for private and semi-private dances offered by Plaintiff and the other

members of the IWPCA Class to Defendant's customers within Defendant's Club; and (vi) controlled the music Plaintiff and the members of the IWPCA Class danced to for the entertainment of Defendant's customers within Defendant's Club. *See* Miss Kitty's Rules; Ex. 3 – Defendant's Admissions, Nos. 3-5, 7, 8, 19, 22-24; Ex. 1 – Plaintiff's Declaration, ¶¶ 11-13, 16-18, 20; Ex. 2 – Defendant's Interrogatory Responses, Responses 3, 5, 6, 7, 16, 20.

To the second and third elements, Plaintiff and the members of the IWPCA class did not perform work that was part of an independently established trade, occupation, or profession, nor did they perform work duties that were outside of Defendant's ordinary business. Instead, Plaintiff and the Class Members' primary job duty while working or performing as exotic dancers within Defendant's Club was objectively low-skill work, focused on interacting with Defendant's customers and performing strip teases and private and semi-private provocative or erotic dances for the Defendant's customers' entertainment and enjoyment. *See* Ex. 3 – Defendant's Admissions, No. 10; Ex. 1 – Plaintiff's Declaration, ¶¶ 6,7. This work was integral to Defendant's Club's strip club business operation. *See* Ex. 3 – Defendant's Admissions, Nos. 1, 10-12; Ex. 1 – Plaintiff's Declaration, ¶¶ 6, 7, 26.

Because of the foregoing, Defendant must qualify as Plaintiff and the members of the IWPCA Class's employer under the IWPCA. As such, the IWPCA expressly proscribed Defendant from taking deductions from Plaintiff or the members of the IWPCA Class's wages unless such deductions were (i) required by law; (ii) to the benefit of Plaintiff and the members of the IWPCA Class; (ii) in response to a valid wage assignment or wage deduction order; or (iv) made with the express written consent of Plaintiff and the members of the IWPCA Class, given freely at the time the deduction is made. *See* 820 ILCS § 115/9.

Further, compliance with the IWPCA required Defendant to "reimburse [Plaintiff and the members of the IWPCA Class] for all necessary expenditures or losses incurred by [Plaintiff and the members of the IWPCA Class] within the [each of their] scope of employment and directly related to services performed for [Defendant]."  820 ILCS § 115/9.5(a).  Under this IWPCA Section, "'necessary expenditures' means all reasonable expenditures or losses required of [Plaintiff and the members of the IWPCA Class] in the discharge of employment duties and that inure to the primary benefit of [Defendant]."  *Id*.

Here, Defendant required Plaintiff and the members of the IWPCA Class to pay Defendant a mandatory "stage rental fee" of $40.00 for each day shift and $50.00 for each night shift Plaintiff and the members of the IWPCA Class worked as exotic dancers within Defendant's Club.  *See* Ex. 2 – Defendant's Interrogatory Responses, Response 3; Ex. 1 – Plaintiff's Declaration, ¶ 19.  This practice violated Plaintiff and the members of the IWPCA Class's rights under the IWPCA in two (2) ways.  First, Defendant deducted a "stage rental fee" kickback from Plaintiff and the members of the IWPCA without express written consent or any other authorizing circumstance, making the same a *per se* unlawful IWPCA wage deduction.  *See* 820 ILCS § 115/9.  Second, Plaintiff and the members of the IWPCA Class's paid the "stage rental fee" to Defendant as "necessary expenditure" directly related to their employment duties as exotic dancers within Defendant's Club.  Consequently, Defendant's retention and failure to reimburse the "stage rental fee" payments to Plaintiff and the members of the IWPCA Class was in direct violation of IWPCA reimbursement requirement.  *See* 820 ILCS § 115/9.5(a).

Based on the foregoing, this Court has good cause to find Defendant violated Plaintiff and each member of the IWPCA Class's wage payment rights under the IWPCA.  Consequently, this Court should make a Summary Judgment finding that Defendant is liable to Plaintiff and the members of the IWPCA Class damages in the full amount of all "stage rental fee" kickbacks deducted or withheld, plus IWPCA statutory interest at 2% per month penalty interest until July 9, 2021, and 5% per month thereafter consistent with the IWPCA's enhanced damages amendment. *See* 820 ILCS 115/14(a).

### III.  <u>CONCLUSION</u>

The facts of this case are not subject to genuine material dispute and fully support this Court's granting of Partial Summary Judgment finding Defendant liable: (i) to Plaintiff and the member of the IMWL Class for back wages at the "free and clear" Illinois Minimum Wage Rate for all hour worked as exotic dancers within Defendant's Club during the period April 2020, through the date of judgment, in an amount to be determined at trial, plus treble damages, and interest at the IMWL statutory rate; and (ii) to Plaintiff and each member of the IWPCA Class for all unreimbursed or deducted "stage rental fees" withheld or deducted by Defendant during the period April 2013, through the date of judgment, in an amount to be determined at trial, plus interest at the IWPCA statutory rate.

Respectfully submitted,

ATHENA HERMAN LAW, LLC

Dated: December 17, 2024

_/s/ *Athena M. Herman*_ (with consent)_____
Athena M. Herman, Esq., ARDC No. 6243625
416 Main St, Suite 811
Peoria, Illinois 61602
Telephone:  (309) 966-0248
Email:  athena@athenahermanlaw.com

ZIPIN, AMSTER & GREENBERG, LLC

_/s/ *Gregg C. Greenberg*_____
Gregg C. Greenberg, MD Fed Bar No. 17291
(To be Admitted *Pro Hac Vice*)
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone:  (301) 587-9373
Fax:  (240) 839-9142
Email:  ggreenberg@zagfirm.com

*Counsel for Plaintiff and the Class*